Joseph H. Harrington
Acting United States Attorney
Eastern District of Washington
Patrick J. Cashman
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MERCED ZAMORA,<br><br>Defendant. | 2:20-CR-00160-RMP-1<br><br>United States' Response to Defendant's Motion to Suppress |

Plaintiff, United States of America, by and through, Joseph H. Harrington, Acting United States Attorney for the Eastern District of Washington, and Patrick J. Cashman, Assistant United States Attorney for the Eastern District of Washington, submits the following response to the Defendant's motion to suppress because the circumstances provided a well-founded basis to impound the vehicle and conduct an inventory search. Accordingly, any evidence derived from the inventory search was properly seized pursuant to a valid search warrant and the Defendant's motion should be denied.

//

//

United States' Response to Defendant's Motion to Suppress - 1

## I. Introduction

The Defendant was charged by way of indictment on November 17, 2020 with one count of Possession with Intent to Distribute 50 Grams or More of Methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(viii), and one count of Felon in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1). ECF No. 1.

On August 18, 2021, the Defendant filed a motion to suppress evidence. ECF No. 27. The Defendant argues Deputy Othmer of the Spokane County Sheriff's Office (SCSO), failed to follow State of Washington law and SCSO policy when he decided to impound the vehicle the Defendant was driving at the time of his arrest.

Based upon a totality of the evidence and circumstances more fully briefed below, Deputy Othmer's decision to impound the vehicle was appropriate and reasonable, and the subsequent search warrants obtained by Detective Richmond were supported by probable cause. Accordingly, the Defendant's motion should be denied.

## II. Facts[1]

While conducting routine patrol at approximately 12:08a.m. on January 11, 2019, Deputy Othmer of the Spokane County Sheriff's Office (SCSO) observed a

---

[1] The United States offers this as a summary only prepared by the assigned AUSA not the potential witnesses involved. Although the summary was prepared from the discovery materials, the United States defers to the proposed exhibits, which include the incident reports, recordings and upcoming testimony as the best source as to the factual background. All exhibits have previously been provided in discovery.

United States' Response to Defendant's Motion to Suppress - 2

silver Honda engage in a traffic violation resulting in Deputy Othmer initiating a traffic stop. ECF No. 27-1, A-3. The traffic violation occurred at the intersection of Ash Street and Central Avenue in Spokane, within the Eastern District of Washington. Id. Specifically, Deputy Othmer observed the silver Honda make a left hand turn from the far-right lane, crossing over the center lane and entering onto Central Avenue in the eastbound direction. Id. Deputy Othmer initiated a traffic stop of the vehicle by activating his vehicle's overhead lights. Id. Deputy Othmer noted the vehicle continued driving east on Central Avenue at approximately five miles per hour for approximately three blocks. Id. Deputy Othmer noted the absence of traffic or vehicles on the shoulder that would have prevented the silver Honda from pulling over sooner. Id. Noting the need for officer safety based upon this observation, Deputy Othmer requested another unit to assist him. Exhibit A; *see also* Exhibit C, pg. 1.

Deputy Othmer made contact with the driver, who was identified by his Washington State identification card as the Defendant, Merced Zamora. ECF No. 27-1, A-3. Also in the vehicle was a female passenger, later identified as Melissa Clark. Id., A-4. During this initial contact Deputy Othmer informed the Defendant as to the basis for the traffic stop. Id., A-3. Deputy Othmer subsequently returned to his vehicle and conducted a records check and learned the Defendant's license was suspended in the third degree. Id. Deputy Othmer waited in his patrol vehicle until a second deputy, Deputy Cinkovich, arrived before exiting his patrol vehicle. Id. Deputy Othmer, at approximately 12:17a.m., approached the vehicle and placed the Defendant under arrest for driving with a suspended license and informed dispatch that he had one in custody. Exhibit A, CAD Log. Deputy Othmer conducted a search incident to arrest of the Defendant's person, which resulted in no contraband being located.

United States' Response to Defendant's Motion to Suppress - 3

ECF No. 27-1, A-3. Deputy Othmer inquired as to the owner of the vehicle, which the Defendant indicated he was the owner after having purchased the car approximately three days prior from the individual listed on the registration. Id. A separate registration check conducted by Deputy Othmer indicated the vehicle was not registered to the Defendant but rather to a different individual. Id.; *see also* Exhibit A. A bill of sale was not provided or subsequently located that indicated the Defendant's previous purchase of the vehicle. Exhibit B, pg. 2.

While Deputy Othmer addressed the above, Deputy Cinkovich returned to the Defendant's vehicle because the female passenger was requesting to call for a ride.[2] ECF No. 27-2. During this interaction, Deputy Cinkovich observed a plastic bag between the driver's seat and the center console. Id. Deputy Cinkovich further observed the bag appeared to contain a crystal-like substance. Id. In order to inform Deputy Othmer of this information, Deputy Cinkovich asked Deputy Hoff to maintain oversight of the object. Id. Deputy Hoff was a trainee deputy and is not employed by the SCSO. Exhibit C, pg. 2. Deputy Cinkovich during this process informed Deputy Othmer from outside the vehicle he observed what appeared to be a clear plastic bag containing a crystal like substance. ECF No. 27-2. Deputy Cinkovich further indicated the bag was located between the center console and the driver's seat near the seatbelt buckle

---

[2] The Defendant proffers through counsel that he observed a deputy open the door and place his upper body inside the vehicle to tell Ms. Clark she was free to leave. The Defendant throughout his motion makes numerous speculative self-serving statements that are not the product of a signed and sworn declaration, therefore, the Court cannot rely on these statements unless the Defendant testifies. *See* LCrR47 and LCivR7(h).

United States' Response to Defendant's Motion to Suppress - 4

receiver. Exhibit C, pg. 2. Deputy Othmer returned to the vehicle and observed what appeared to be a clear plastic bag but was unable to see the contents. ECF No. 27-1, A-3; Exhibit C, pg. 2. Deputy Othmer inquired into Ms. Clark's driving status and learned from Ms. Clark and a records check that her license was also suspended. Exhibit B, pg. 3. Ms. Clark indicated that she needed to leave to address a family medical issue. Ecf No. 27-1, A-4. Accordingly, Deputy Othmer determined because the vehicle was not registered to the Defendant and there was a different owner listed on the registration, pursuant to RCW 46.55.113(1), he would impound the vehicle. ECF No. 27-1. At approximately 12:30a.m., Deputy Othmer requested dispatch initiate a tow. Exhibit A. Prior to Deputy Othmer conducting an inventory of the contents of the Honda, the Defendant stated "anything in the vehicle is not his and that it is the previous owners." ECF No. 27-1, A-3.

Deputy Othmer, following SCSO impound policy began an inventory of the vehicle. ECF No. 27-5. During this inventory, Deputy Othmer observed the plastic bag previously described by Deputy Cinkovich. ECF No. 27-1. Deputy Othmer proceeded to inventory the contents of the center console when he observed a pistol. Id. Deputy Othmer exited the vehicle and returned to his patrol vehicle to conduct a records check where he learned the Defendant was a convicted felon. Id. Subsequently, Deputy Othmer requested dispatch cancel the impound tow and schedule a contract tow in order to secure the vehicle and deliver it to the SCSO in order for a search warrant to be secured. Exhibit A.

On January 15, 2019, Detective Brad Richmond and Deputy Othmer executed a state search warrant on the vehicle. Exhibit B. During the search warrant execution, the officers located a loaded black Ruger LCP .380 caliber pistol, bearing serial number 370-61483 in the center console as well as a jar

United States' Response to Defendant's Motion to Suppress - 5

containing several buds of marijuana. In the lower portion of the center console, Deputy Othmer located a greenish colored coin bag containing a small plastic bag contining approximately 2.5 grams of a white powdery substance, a second plastic bag containg approximately 1.8 grams of a white crystal-like substance, and a third plastic bag containing an unidentified white crystal-like substance. Also located in the lower console was a firearm magazine containing .22 caliber ammunition, a black Samsung cell phone, a box containing eighty-eight Winchester .380 caliber bullets, and a plastic bag containing six .380 caliber bullets. Located in a black colored backpack on the rear passenger seat behind the driver's seat, officers located an electronic scale and a plastic bag containing approximately 34.4 grams of a white crystal like substance from the front small compartment. A subsequent field test of the crystal like substance indicated a presumptive positive for methamphetamine. In the main compartment of the backpack, officers located a large ball wrapped in a black and gray plastic sack. This ball weighed approximately 206.8 grams and appeared to contain a white crystal like substance that subsequently field tested presumptive positive for methamphetamine.

    Located behind the front passenger seat was a backpack with a flower print. Inside the backpack officers located several sandwich sized clear Ziploc bags and a silver colored digital scale. Officers also located an employee ID card from Cannabis and Glass with the name of a different individual. The photograph of the individual did not resemble the Defendant or Ms. Clark. Additionally, the officers located a torn-up small phonebook with the Defendant's name and several other pieces of paperwork in the flower backpack. In the trunk of the vehicle, the officers located a Marlin 989 .22 caliber rifle as well as approximately fifty .22 caliber bullets.

United States' Response to Defendant's Motion to Suppress - 6

On August 25, 2021, Detective Kevin Langford from the Spokane Regional Safe Streets Task Force, contacted Divine's Auto to determine who retrieved the vehicle from their impound lot after the search warrant execution. Detective Langford learned from an employee at Divine's the vehicle was returned to the registered owner. Exhibit C.

The United States intends to supplement the exhibits previously provided to the Court with testimony from Deputy Othmer at the suppression hearing.

### III.    Law and Argument

A. <u>The deputy conducted a lawful impoundment and inventory of the vehicle.</u>

The United States Supreme Court has held inventory searches as a valid exception to the Fourth Amendment. *See South Dakota v. Opperman*, 428 U.S. 364 (1976), *Colorado v. Bertine*, 479 U.S. 367 (1987), and *Florida v. Wells*, 495 U.S. 1 (1990). The purpose of inventory searches due to impound is to ensure the car and its conents are secure and protected. *Opperman*, 428 U.S. at 373; *see also Florida v. Wells*, 495 U.S. at 4. In the Ninth Circuit "police may, without a warrant, impound and search a motor vehicle so long as they do so in conformance with the standardized procedures of the local police department and in furtherance of a community caretaking purpose, such as promoting public safety or the efficient flow of traffic." *United States v. Torres*, 828 F.3d 1113, 1118 (9th Cir. 2016); *see also United States v. Caseres*, 533 F.3d 1064, 1074 (9th Cir. 2008) ("Warrantless inventory searches of vehicles are lawful only if conducted pursuant to standard police procedures that are aimed at protecting the *owner's* property and at protecting the police from the owner charging them with having stolen, lost, or damaged his property") (emphasis added).

Pursuant to Washington State law it is a misdemeanor to operate a motor vehicle with a suspended license. *See* RCW 46.20.342(1)(C). If a driver of a

United States' Response to Defendant's Motion to Suppress - 7

vehicle is arrested for violation of RCW 46.20.342 or 46.20.345, the vehicle "is subject to summary impoundment, pursuant to the terms and conditions of an applicable local ordinance or state agency rule at the direction of a law enforcement officer." *See* RCW 46.55.113(1). RCW 46.55.113(2) further outlines other circumstances where the officers may take custody of the vehicle at their discretion. In Spokane County, the SCSO has developed a policy that complies with State law. ECF No. 27-5. The policy states "[w]henever a person in charge or in control of a vehicle is arrested, it is the policy of this department to provide reasonable safekeeping for the arrestee's vehicle." ECF No. 27-5.

However, in considering whether to impound a vehicle, the policy indicates a deputy "should *consider* reasonable alternatives prior to impounding any vehicle." ECF No. 27-5 (emphasis added). Among the factors a deputy may consider, but not limited to, are: whether the offense of arrest mandates vehicle impoundment; the availability of someone at the scene of the arrest to whom the vehicle could be released; whether the vehicle is impeding the flow of traffic or a danger to public safety; whether the vehicle can be secured; whether the owner/operator requests the vehicle be stored; and whether the vehicle would be in jeopardy of theft or damage if left at the scene in a high-crime area. The policy further requires deputies to conduct an inventory of any impounded vehicle "for the purpose of protecting an owner's property while in sheriff's custody, to provide for the safety of deputies, and to protect the [SCSO] against fraudulent claims of lost, stolen, or damaged property."

Deputy Othmer was not required to exhaust all potential avenues as suggested by the Defendant. *See State v. Tyler*, 177 Wash.2d at 699 (1997); *see also Colorado v. Bertine*, 479 U.S. 367, 373-74 (1987), citing *Illinois v. Lafayette*, 462 U.S. 640, 647 (1983) (in relation to reasonable police regulations

United States' Response to Defendant's Motion to Suppress - 8

consideration of alternative to towing and impoundment are not required because the reasonableness of any governmental activity does not necessarily turn on the existence of less intrusive means). Rather, Deputy Othmer need only consider other alternatives and determine, including consideration of his training and experience, what the appropriate course of action was. In determining whether an impoundment is reasonable under the circumstances requires an act of judgment by the officer on the scene. *See State v. Villela*, 194 Wash.2d 451, 460 (2019). Moreover, "when an officer impounds a vehicle for a reason other than the community caretaker function, the State is not required to establish that the driver's spouse or friends are not able to move the vehicle." *See State v. Froehlich*, 197 Wn.App. 831 (2017). Washington courts have previously held "when an officer was acting under a statutory authority to impound because the driver had a suspended license, the owner of the vehicle was not at the scene, and there was no inquiry into whether someone could come move the vehicle, the impoundment and resulting inventory search were lawful. *See State v. Peterson*, 92 Wn.App. 899, 902-03 (1998).

The Defendant asserts his case is distinguishable from *Peterson* but provides no analysis to support this conclusion. On the contrary, the facts in *Peterson* support a finding that Deputy Othmer acted appropriately under the circumstances of this case. In *Peterson*, the defendant was the driver and sole occupant of a vehicle stopped for a traffic violation. *Peterson*, 92 Wn.App. at 901. Upon conducting a records check of the defendant, the officer learned the defendant had a suspended license. *Id.* Additionally, the officer learned the vehicle was registered to a separate individual. *Id.* Based upon this information and without attempting to contact the registered owner, the officer decided to impound the car. *Id.* During the course of an inventory of the car, the officer

United States' Response to Defendant's Motion to Suppress - 9

located controlled substances. *Id.* The Washington Court of Appeals, Division 3 held the impoundment and subsequent inventory were reasonable under the circumstances of this case. *Id.* at 903. Of particular note in the court's holding, the court stated "the owner was not present to authorize a license and insured driver to remove the vehicle or to authorize leaving the vehicle by the side of the reaod…The impoundment was the best approach to protect the police and the property owner and was reasonable under these circumstances." *Id*.

Deputy Othmer's decision to impound the vehicle was appropriate and reasonable under the circumstances. Deputy Othmer gave consideration to alternatives, including determining if the passenger could drive the vehicle, but deemed those alternatives insufficient to protect the registered owner's, who was not the Defendant, property. While it is accurate Deputy Othmer, following the policy, had a number of options to consider, including: (1) determine if an individual on scene could lawfully take the vehicle, which Ms. Clark was not able to do as she left the scene and her license was revoked; (2) contact the registered owner, which Deputy Othmer did but was unsuccessful; or (3) impound the vehicle.

Given the surrounding circumstances, Deputy Othmer, having considered the alternatives of leaving the vehicle or allowing a licensed operator to take the vehicle, determined the appropriate course of action was to impound the vehicle. This decision was driven by the late hour of the stop, Deputy Othmer's ovservations of the Defendant, the Defendant's suspended driving status, the passenger's suspended driving status, and Deputy Othmer's concern that the vehicle was not registered to the Defendant and therefore releasing the vehicle, without further proof of ownership, could result in harm to the vehicle or liability for the county.

United States' Response to Defendant's Motion to Suppress - 10

The Defendant further alleges the Deputy made a hasty decision to impound the vehicle. This is belied by the CAD report which shows the Deputy placed the Defendant under arrest at 12:17a.m. and requested a tow approximately 13 minutes later at 12:30a.m.. Exhibit A. This was not a hasty decision. The deputy considered the particular circumstances of the stop and determined the reasonable course of action was to impound the vehicle. Accordingly, when considering the totality of circumstances, Deputy Othmer's decision to impound the vehicle, was lawful and reasonable.

In *United States v. Magdirilia*, the Ninth Circuit held the denial of a motion to suppress was correct because the evidence was discovered during a valid inventory search. 962 F.3d 1152, 1155. While *Magdirilia* is most applicable in pre-text analysis, the facts of the case give support to the matter before the Court. In *Magdirilia*, officers contacted the defendant because his vehicle was parked in violation of a municipal code and lacked permananent license plates. Upon making contact with the defendant, the officers learned the defendant did not have a driver's license and the vehicle belonged to a "friend." Based upon the defendant's lack of a driver's license, the officers decided to impound the vehicle. *Id.* at 1154. This decision "triggered a duty under the policy to take an "accurate inventory" of the vheicles contents.' *Id.* at 1155. Similarly in the matter before the Court, Deputy Othmer's decision to impound the vehicle triggered the duty to conduct an inventory of the contents of the vehicle.

B. The deputy conducted the impound and inventory in good faith.

The deputy did not conduct the impound and inventory in bad faith and as a pre-text to conduct a general rummaging. *Florida v. Wells*, 495 U.S. at 4. The burden is on the defendant to establish evidence that an inventory search was a

United States' Response to Defendant's Motion to Suppress - 11

pretextual in nature. *United States v. Orozco*, 858 F.3d 1204, 1213 (9th Cir. 2017); *see also United States v. Maestas*, 2 F.3d 1485, 1489 (10th Cir. 1993). Here, the Defendant has not, and cannot, meet his burden of establishing the single motive of the inventory search was investigative and nature and that but for the investigative motivation the search would not have occurred.

"A search conducted pursuant to a regulatory scheme is invalid if the officer's sole purpose in performing it is investigatory. *Orozco*, 858 F.3d at 1210. However, when conducting an inventory search, a law enforcement officer may maintain a "dual motive" and the search will not be invalid. *United States v. Johnson*, 889 F.3d 1120, 1126 (9th Cir. 2018) ("the mere 'presence of a criminal investigatory motive' or a 'dual motive – one valid, and one impermissible" does not render the search invalid). Rather, the courts have routinely looked to determine whether the challenged search or seizure "would…have occurred in the absence of an impermissible reason." *Id*.; *see also United States v. Johnson*, 889 F.3d 1120, 1126 (9th Cir. 2018) ("We thus must determine whether Johnson has produced evidence that demonstrates the officers would not have searched and seized items from the car he was driving but for an impermissible motive").

In *Johnson*, the Ninth Circuit noted the defendant's argument the officers inventory search was pretextual overlooked the need to impound the car. *Johnson*, 889 F.3d at 1126. In *Johnson*, the defendant was not the owner of the vehicle nor could he provide contact information for the car's owner. *Id.* The Ninth Circuit found

> "Johnson's inability to contact the owner could not have been orchestrated by the police…In other words, the officers' chosen method of stopping Johnson would seem to be a poor way to orchestrate a scenario in which they would get to tow his car unless they could have somehow known ahead of time that the car's true owner would be unavailable to retrieve it. There is no evidence

United States' Response to Defendant's Motion to Suppress - 12

that the officers were aware of such fact when they chose to pull him over."

*Id.*

In this case, Deputy Othmer impounded and inventoried the vehicle in good faith. The circumstances at the time of the inventory in fact supported a suspicion the vehicle may have been stolen or taken without permission. However, that suspicion was not the motivation for conducting the inventory. Rather, following SCSO policy which mandates an inventory of any vehicle that is impounded was the motivating factor. Beyond the aforementioned reasoning supporting the impoundment, Deputy Othmer's intent at the time of the inventory is supported by the CAD log which shows Deputy Othmer requesting an impound tow and subsequently, only after observing a firearm, did Deputy Othmer request a contract tow.

Moreover, while Deputy Othmer's suspicion of the vehicle potentially being stolen was not the motivating factor for searching the vehicle, the information related to that suspicion warrants the deputies consideration on the appropriateness of the impound. Had the vehicle actually been stolen and released back to a "friend" of the Defendant, Deputy Othmer would have been unwittingly allowing the continued deprivation of property from its rightful owner. At the time of the stop, the only information Deputy Othmer could reasonably rely on for ownership were the State records that indicated the Defendant was not the registered owner of the vehicle. Deputy Othmer had the legal authority, pursuant to statute, to impound the vehicle. Deputy Othmer considered the alternatives to impound and determined, based on his training and experience, those alternatives were not reasonable. Therefore, that decision triggered a duty to conduct an inventory.

United States' Response to Defendant's Motion to Suppress - 13

Furthermore, the Defendant, again without support or in declaration, proffers Deputy Othmer placement of a phone call and subsequent release is indicative of the pre-textual nature of the search. The Defendant's position is misplaced and belied by Deputy Othmer's statement to Detective Langford. The decision to release the Defendant was driven by Deputy Othmer's superior officer as a determination was made that all charges would be forward to the Spokane County Prosecutor's Office to make a determination whether to file charges. Exhibit C.

Accordingly, the Court should deny the Defendant's motion on this basis as the search was not pretextual and the Defendant has failed to establish his burden.

C. <u>The deputies obtained search warrants to ensure they did not exceed the scope of the inventory search.</u>

The United States agrees a search warrant void of the inventory search information would not support a finding of probable cause. However, based upon the aforementioned, the inventory search was properly conducted. Therefore, the search warrant contained sufficient probable cause to justify the authorization and subsequent search of the vehicle.

D. <u>The Defendant abandoned his privacy interest in the items located in the vehicle.</u>

Because Deputy Othmer properly impounded the vehicle and followed SCSO policy and procedure and was lawfully present in the vehicle, the items located pursuant to the inventory search and subsequent search warrant are not the product of an illegal search. Rather, the Defendant abandoned his reasonable expection of privacy to the contents of the vehicle prior to the inventory search

United States' Response to Defendant's Motion to Suppress - 14

occurring. Where a defendant voluntarily abandons property, he has no standing to complain of the subsequent seizure and search. *Abel v. United States*, 362 U.S. 217, 240-41 (1960). "Abandonment is primarily a question of intent, and intent may be inferred from words, acts, and other objective facts." *United States v. Jackson*, 544 F.2d 407, 409 (9th Cir. 1976). In *United States v. Veatch*, the Ninth Circuit held the defendant had no standing to challenge the search of a wallet located in a vehicle he obtained through fraud and was a passenger in. 674 F.2d 1217, 1221 (9th Cir. 1981). At the time of the defendant's arrest, law enforcement officers observed a wallet and firearm where the defendant was previously seated. *Id.* at 1219. Upon asking the defendant if he wanted those items taken with him, the defendant explicitly disclaimed ownership of those items. *Id.* When a party disclaims ownership, they lose "a legitimate expection of privacy in the property and thereby disclaims any concern about whether the property or its contents remain private." *Id.* at 1220. Where an individual denies ownership, even when previously observed in possession of the item, they have abandoned their interest in the item. *United States v. Cella*, 568 F.2d 1266, 1283 (9th Cir. 1977).

Here, the Defendant prior to the inventory search, stated "anything in the vehicle is not his and that it is the previous owners."[3] ECF No. 27-1, A-3. The Defendant, by his statements, therefore limited his reasonable expection of privacy to only those items inside the car that were his. However, due to the Defendant's disclaimer of ownership over "anything inside the car," the Defendant effectively abandoned his reasonable expectation of privacy of those

---

[3] This statement is further information warranting consideration in determining whether impoundment and inventory is reasonable.

United States' Response to Defendant's Motion to Suppress - 15

items within the vehicle.  These items include the baggie of methamphetamine, the firearm in the center console, the backpacks located on the backseat of the car, and the items located in the trunk.  The Defendant cannot maintain the benefit of the protection of the Fourth Amendment while simultaneously abandoning any ownership or possessory responsibility for those items.

    E. <u>The Defendant's remaining basis for suppression are not relevant to the analysis.</u>

The Defendant proffers three additional basis warranting suppression:  (1) the search was not the result of a lawful *Terry* frisk; (2) the search was not the result of plain view; and (3) the search was not the result of a lawful search incident to arrest.  The United States does not believe these basis are relevant to the analysis.

//
//
//
//
//
//
//
//
//
//
//
//
//
//

United States' Response to Defendant's Motion to Suppress - 16

### IV. Conclusion

The issue before the Court is whether the impoundment of the vehicle was reasonable under the circumstances. Here, based on the totality of the circumstances at the time of the impoundment, the Deputies decision was reasonable, appropriate, and lawful. Accordingly, the Court should deny the Defendant's motion because the evidence located during an inventory search and subsequent execution of search warrants was lawfully seized.

DATED August 27, 2021.

                                            Joseph H. Harrington
                                            Acting United States Attorney

                                            *s/Patrick J. Cashman*
                                            Patrick J. Cashman
                                            Assistant United States Attorney

# **CERTIFICATION**

I hereby certify that on August 27, 2021, I electronically filed the foregoing with the Clerk of the Court and that this document will be sent to counsel of record via e-mail.

Lorinda Youngcourt:  Lorinda_youngcourt@fd.org

*s/Patrick J. Cashman*
Patrick J. Cashman
Assistant United States Attorney

United States' Response to Defendant's Motion to Suppress - 18