FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 06, 2021

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MERCED ZAMORA,<br><br>Defendant. | NO: 2:20-CR-160-RMP-1<br><br>ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE |

BEFORE THE COURT is a Motion to Suppress Evidence, ECF No. 27, from Defendant Merced Zamora. Mr. Zamora is charged with possession with intent to distribute 50g or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(viii), and being a felon in possession of firearms and ammunition, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2). ECF No. 1. The United States alleges that Mr. Zamora possessed the drugs, guns, and ammunition on or about January 11, 2019. *Id.* Defendant seeks to suppress the evidence seized when his vehicle was impounded without a search warrant on January 11, 2019, as well as

ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE ~ 1

evidence seized on January 15, and 16, 2019, pursuant to two search warrants based on evidence found during the impound search. ECF No. 27 at 2.

The Court heard oral argument on the Motion at a pretrial conference on Friday, December 3, 2021. Defendant, who is in custody of the U.S. Marshal, was represented by Assistant Federal Defender Lorinda Youngcourt. The Government was represented by Assistant United States Attorney Patrick Cashman. The Court heard testimony from Spokane County Sheriff's Office ("SCSO") Deputy Mitchell Othmer. The Court admitted exhibits and heard from counsel. Having reviewed the parties' filings and exhibits, heard the argument and testimony presented at the suppression hearing, and reviewed the relevant law, the Court is fully informed.

## FACTUAL BACKGROUND

As an initial matter, Deputy Othmer was the only witness who testified. Deputy Othmer's testimony is accepted in full, and this Court finds that he was fully credible and detailed in his testimony. In consideration of Deputy Othmer's testimony, the party's exhibits, and the remaining record, the Court makes the following factual findings.

### *Traffic Stop and Search of the Vehicle*

Around 12:08 a.m. on January 11, 2019, SCSO Deputy Othmer initiated a traffic stop of a Honda Accord for an alleged improper left turn in northwest Spokane, Washington. ECF No. 27-1 at 3. Deputy Othmer was in a marked Sherriff's Office vehicle and activated his overhead lights to signal the Honda to stop.

ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE ~ 2

According to Deputy Othmer's case report, the driver of the Honda continued driving at approximately five miles per hour before stopping, approximately three blocks later. Deputy Othmer reported: "There was no traffic and no other vehicles on the shoulder that would have prevented the driver from stopping and pulling over sooner. I asked for another unit to come and assist me." *Id.* Mr. Zamora asserts that the distance between the alleged improper left turn and the traffic stop was only "two narrow blocks," according to Google Maps. ECF No. 27 at 2, n. 2.

Deputy Othmer approached the driver-side window of the Honda, and the driver provided a Washington State identification ("ID") card for Merced Zamora; the photo on the ID card resembled the driver. ECF No. 27-1 at 3. There was also a passenger in the vehicle. *Id.* at 4. Deputy Othmer reported that he returned to his patrol vehicle to run a Department of Licensing check on Mr. Zamora's license and saw that it was suspended in the third degree. *Id.*

Deputy Othmer reported that when SCSO Deputy Cinkovich[1] arrived at the location of the stop, Deputy Othmer and Deputy Cinkovich approached the driver-side window of the Honda and asked Mr. Zamora to step out of the vehicle. Mr. Zamora complied, and Deputy Othmer reported that he placed Mr. Zamora under arrest and detained him in the patrol vehicle. Deputy Othmer searched Mr. Zamora's person and found no contraband. *See* ECF No. 27-1 at 3.

---

[1] The Court does not find Deputy Cinkovich's first name in the record.

ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE ~ 3

Deputy Othmer reported that he asked Mr. Zamora who owned the vehicle, and Mr. Zamora told him that he purchased the vehicle three days ago from the person named on the registration. Deputy Othmer requested a tow for the Honda "[b]ased on the fact that Zamora was not the registered owner of the vehicle and that his license was suspended[.]" ECF No. 27-1 at 3.

Deputy Othmer reported that Deputy Cinkovich told him that Deputy Cinkovich "saw a clear plastic bag containing what appeared to be a white crystal-like substance from outside of the vehicle lying between the driver seat and the center console" but does not identify in the case report when, in the course of events, this notification occurred. ECF No. 27-1 at 3. Deputy Othmer testified that he himself could not see the plastic bag containing a powdery substance from standing outside of the Honda, and Deputy Othmer maintains that the bag did not factor into his decision-making regarding whether to impound the vehicle.

Deputy Cinkovich's report differs from Deputy Othmer's report in that Deputy Cinkovich reported arriving on the scene as Deputy Othmer was taking the suspect into custody. ECF No. 27-2 at 2. Deputy Cinkovich further reported:

> I returned to the vehicle because the passenger was asking if she was able to call a ride. As I was speaking with her, I noticed what appeared to be a crystalline substance consistent with methamphetamine in a plastic bag stuffed between the driver's seat and the middle console

ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE ~ 4

> inside the vehicle. I had Deputy Hoff[2] keep an eye on the substance while I advised Deputy Othmer of the substance.
>
> The vehicle was towed to the Sheriffs DEM lot pending a search warrant.

*Id.*

Deputy Othmer subsequently read Mr. Zamora his *Miranda*[3] rights, and Mr. Zamora confirmed that he understood his rights and was willing to waive them. Mr. Zamora declined to give consent to Deputy Othmer to search the vehicle. Deputy Othmer searched the vehicle anyway, as "an inventory search of the Honda prior to it being towed" and saw the plastic bag containing the crystal-like substance between the driver seat and center console. Deputy Othmer also lifted the cover of the center console and saw a handgun in a holster with a magazine. Deputy Othmer returned to his patrol vehicle to search Mr. Zamora's criminal history and saw that Mr. Zamora has a past felony conviction.

Deputy Othmer reminded Mr. Zamora of the *Miranda* warnings, and Mr. Zamora again said that he was willing to speak with Deputy Othmer. Deputy Othmer continued in his report:

> I asked Zamora again how long he has had the vehicle. He told me he bought it approximately three or four days ago. I asked him what took him so long to pull over. He told me he was looking for a good spot to pull over. I asked Zamora whose meth is in the vehicle. He told me it

---

[2] Deputy Hoff was a "probationary deputy" accompanying Deputy Cinkovich. ECF No. 28-3 at 3.

[3] *Miranda v. Ariz.*, 384 U.S. 386 (1966).

ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE ~ 5

> is not his and must have been the previous owners. I asked him if he knows why there is a gun in the center console of the vehicle. He told me he did not know there was a gun in the vehicle. I notified Zamora that based on my observations of a handgun and the white crystal-like substance, that I was seizing his vehicle and that I would be applying for a search warrant. I then collected Zamora's current contact information and address and he was released.

ECF No. 27-1 at 4.

Deputy Othmer called the registered owner of the Honda, left a voice mail message, and was unable to reach her. ECF No. 27-1 at 5. Deputy Othmer could not recall exactly when during the stop he called the registered owner. Deputy Othmer testified that if he had been able to speak with the registered owner from the location of the stop, and had she confirmed that Mr. Zamora had permission or other basis to possess the Honda, Deputy Othmer would have ceased the impound.

Deputy Othmer returned to the Honda to speak with the passenger, who informed him that her name is Melissa Clark. After responding to questions about her relationship with Mr. Zamora, what she observed while a passenger in the vehicle, and her purpose in traveling with Mr. Zamora that evening, Deputy Othmer took Ms. Clark's contact information and told her she was free to leave. ECF No. 27-1 at 4. In a supplemental case report dated January 11, 2019, but reciting information collected on January 15, 2019, Deputy Othmer reported:

> In my previous report I realized that I did not state while talking to Clark during that traffic stop, she told me that her license was suspended in the third degree. I confirmed that by running a DOL check on Clark. Clark was in a hurry to leave from the stop because she had stated her sister is on life support in the hospital. Clark stated she is her

ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE ~ 6

sisters [sic] power of attorney and had to get to the hospital to decide whether to take her sister off of life support. I determined since both the Driver and passenger's licenses were suspended to start an impound tow for the vehicle.

ECF No. 27-6 at 5.

### Search Warrants

SCSO Detective Brad Richmond provided an affidavit for a search warrant dated January 15, 2019, relying for probable cause on the events and observations reported by Deputy Othmer in his initial and supplemental case reports. *See* ECF Nos. 27-3; 27-4 at 4−6; and 27-6.

The Spokane County Superior Court issued the search warrant for firearms and controlled substances and paraphernalia in the Honda on January 15, 2019. ECF No. 27-3 at 9−10. While executing the January 15, 2019 search warrant, law enforcement observed a cell phone and tablet and sought and obtained a second search warrant for those electronics on January 16, 2019. ECF No. 27-4.

### SCSO Policy

The SCSO Policy Manual provides that "[w]henever a person in charge or in control of a vehicle is arrested, it is the policy of this department to provide reasonable safekeeping for the arrestee's vehicle." ECF No. 27-5 at 1 (Policy 510.3).

A deputy determining whether to impound "should consider reasonable alternatives prior to impounding any vehicle." *Id.* (Policy 510.4). A deputy should consider the following non-exclusive factors: whether the offense of arrest mandates

ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE ~ 7

vehicle impoundment; the availability of someone at the scene of the arrest to whom the vehicle could be released; whether the vehicle is impeding the flow of traffic or a danger to public safety; whether the vehicle can be secured; whether the owner/operator requests the vehicle be stored; and whether the vehicle would be in jeopardy of theft or damage if left at the scene in a high-crime area. *Id.* at 1−22 (Policy 510.4). The policy further requires deputies to conduct an inventory of any impounded vehicle "for the purpose of protecting an owner's property while in sheriff's custody, to provide for the safety of deputies, and to protect the [SCSO] against fraudulent claims of lost, stolen, or damaged property." *Id.* at 2 (Policy 510.5).

### *August 25, 2021 Additional Report*

After Mr. Zamora filed the instant Motion to Suppress, the Government and law enforcement members of the Spokane Regional Safe Streets Task Force spoke with Deputies Othmer and Cinkovich, separately, seeking clarification of certain details of the January 11, 2019 traffic stop and impound. ECF No. 28-3. Deputy Othmer reported that he cancelled the impound tow, released Mr. Zamora from custody for the driving-with-license-suspended, and initiated an evidence tow after speaking with his supervisor, Sergeant Jared Kiehn. ECF No. 28-3 at 3.

### DISCUSSION

Defendant argues that the SCSO deputies violated federal and Washington state law, as well as SCSO policy, when they impounded and searched the vehicle

ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE ~ 8

during the traffic stop and that the two search warrants were based on the evidence illegally obtained through the impound search. ECF No. 27 at 2. Therefore, Defendant seeks to suppress the evidence from the January 11, 2019 impound and search and from the search warrants dated January 15 and 16, 2019. *Id.* Defendant further asserts that Deputy Cinkovich conducted a search without a warrant or probable cause before the inventory search because he could not have seen the bag suspected to contain drugs without inserting at least his upper body inside the vehicle when he was speaking to the passenger. ECF No. 29 at 6 (citing *United States v. Ngumezi*, 960 F.3d 1285, 1290 (9th Cir. 2020)). Defendant also disputes whether he was arrested for driving with a suspended license because Deputy Othmer ultimately released him when he decided to seek a search warrant. *Id.* at 2.

The Government responds that the impound of Defendant's vehicle was reasonable under the circumstances, in which Deputy Othmer determined that the passenger could not drive the vehicle and that the registered owner of the vehicle could not immediately be contacted to confirm that Mr. Zamora or his passenger had the owner's permission to possess the vehicle. ECF No. 28 at 10. The Government continues that Deputy Othmer's decision to impound the vehicle "was driven by the late hour of the stop, Deputy Othmer's ovservations [sic] of the Defendant, the Defendant's suspended driving status, the passenger's suspended driving status, and Deputy Othmer's concern that the vehicle was not registered to the Defendant and therefore releasing the vehicle, without further proof of ownership, could result in

ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE ~ 9

1  harm to the vehicle or liability for the county." *Id.*  The Government further argues

2  that Defendant abandoned his privacy interest in the items that Deputy Othmer

3  observed during the inventory search when he disclaimed ownership of those items

4  and asserted that the items must have been the property of the previous owner of the

5  vehicle. *Id.* at 15.

6  The Fourth Amendment protects "[t]he right of the people to be secure in their

7  persons, houses, papers, and effects, against unreasonable searches and seizures."

8  U.S. Const. amend. IV.  "A warrantless search is unconstitutional unless the

9  government demonstrates that it falls within certain established and well-defined

10  exceptions to the warrant clause."  *United States v. Brown*, 563 F.3d 410, 414 (9th

11  Cir. 2009) (internal quotation and brackets omitted).  Evidence obtained subsequent

12  to a violation of the Fourth Amendment is tainted by illegality and is inadmissible as

13  "fruits of the poisonous tree" unless the evidence was "purged of the primary taint."

14  *United States v. Washington*, 490 F.3d 765, 774 (9th Cir. 2007) (quoting *Wong Sun v.*

15  *United States*, 371 U.S. 471, 488 (1963)).

16  The Government bears the burden of persuading the Court that a warrantless

17  search does not violate the Fourth Amendment.  *Brown*, 563 F.3d at 415.

18  ***Inventory Search Exception***

19  Police may impound and search a motor vehicle without a warrant, "'so long

20  as they do so in conformance with the standardized procedures of the local police

21  department and in furtherance of a community caretaking purpose, such as promoting

ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE ~ 10

1  public safety or the efficient flow of traffic.'" *United States v. Johnson*, 889 F.3d

2  1120, 1125 (9th Cir. 2018) (per curiam) (quoting *United States v. Torres*, 828 F.3d

3  1113, 1118 (9th Cir. 2016)).  However, "[t]he fact that an impoundment complies

4  with a state statute or police policy, by itself, is insufficient to justify an

5  impoundment under the community caretaking exception." *United States v.*

6  *Cervantes*, 703 F.3d 1135, 1142 (9th Cir. 2012) (internal quotations omitted).

7  Washington state law also recognizes a non-investigatory, good faith inventory

8  search in conjunction with the impoundment of a vehicle as an exception to the

9  warrant requirement.  *State v. Tyler*, 177 Wn.2d 690, 700-01 (Wash. 2013).  Under

10 both federal and Washington state law, an inventory search is lawful only if the

11 impoundment of the vehicle is also lawful.  *Wong Sun v. United States*, 371 U.S. 471,

12 488 (1963); *State v. Duncan*, 185 Wn.2d 430, 440 (Wash. 2016).

13 The Ninth Circuit held that "[t]he state has the right to allow the driver to drive

14 away with the vehicle only if he or she is able to do so in compliance with all

15 regulations . . . ," stating that "[t]he violation of a traffic regulation justifies

16 impoundment of a vehicle if  the driver is unable to remove the vehicle from a public

17 location without continuing its illegal operation." *Miranda v. City of Cornelius*, 429

18 F.3d 858, 865 (9th Cir. 2005).  The government "bears the burden of establishing that

19 a vehicle's impoundment and search are justified" under the exception to the warrant

20 requirement.  *Torres*, 828 F.3d at 1118.

21

ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE ~ 11

In addition, an inventory search conducted pursuant to a regulatory scheme may be invalid if the officer's sole purpose in performing the search is investigatory. *United States v. Orozco*, 858 F.3d 1204, 1210 (9th Cir. 2017). An administrative purpose or mixed motivation for the search is permissible. *Johnson*, 889 F.3d at 1126. The defendant bears the burden of showing that an inventory search was pretextual in nature. *Orozco*, 858 F.3d at 1213.

Furthermore, material deviations from department policy can render an inventory search invalid, but minor noncompliance does not invalidate an otherwise lawful inventory search. *United States v. Magdirila*, 962 F.3d 1152, 1157 (9th Cir. 2020), *distinguished in other part by United States v. Gibson*, 998 F.3d 415 (9th Cir. 2021).

Deputy Othmer pulled Defendant over for making a left turn from the wrong lane of a one-way street. Deputy Othmer then determined that Defendant was driving with his license suspended. Deputy Othmer further determined that the vehicle that Defendant was driving was not registered to him or the passenger of the vehicle. Defendant did not provide Deputy Othmer with any bill of sale or other support for his assertion that he had purchased the vehicle.

Operating a vehicle with a suspended license is a misdemeanor in Washington State, and when a driver is arrested for the offense, the vehicle "is subject to summary impoundment, pursuant to the terms and conditions of an applicable local ordinance or state agency rule at the direction of a law enforcement officer. Revised

ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE ~ 12

Code of Washington ("RCW") 46.20.342(1)(C); 46.55.113(1).  SCSO Policy 510.4, in turn, requires deputies to consider whether the offense is subject to summary vehicle impoundment and the availability of someone at the scene of the arrest to whom the vehicle could be released.  *See* ECF No. 27-5 at 1–2.

When Deputy Othmer began his inventory search of the Honda and found the bag of suspected drugs and the firearm, Mr. Zamora already was under arrest for driving with a suspended license.  Deputy Othmer had *Mirandized* Mr. Zamora, handcuffed him, and detained him in the back of the patrol car.  Before initiating an impound, Deputy Othmer considered whether either Mr. Zamora or his passenger had a demonstrable entitlement to possess the vehicle and whether there was anyone on the scene who could remove the vehicle from the public location without continuing its illegal operation.  *See City of Cornelius*, 429 F.3d at 865.

Once Deputy Othmer determined that an impound was appropriate, he was obligated to conduct an inventory search.  ECF No. 27-5 at 2 (SCSO Policy 510.5).  Deputy Othmer's actions with respect to the impound and inventory search carefully adhere to relevant Washington state law.  *See State v. Peterson*, 92 Wn. App. 899, 902–03 (1998) (holding that an impound and inventory search were lawful when an officer was acting under statutory authority to impound because the driver had a suspended license and the owner of the vehicle was not at the scene, even where there was no inquiry into whether someone could come move the vehicle).

ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE ~ 13

Moreover, after finding the suspected drugs and the firearm, Deputy Othmer ceased the inventory search, cancelled the impound tow, initiated an evidence tow, and released Defendant pending the SCSO's application for a search warrant. The Court finds that these actions further demonstrate that Deputy Othmer initiated the impound and inventory of the vehicle in good faith and without an investigatory motive, as Deputy Othmer ceased both actions once he determined to pursue an investigation through a search warrant. The Court does not rely on the Government's abandonment argument, as Mr. Zamora asserted that the alleged drugs and firearm in in the vehicle belonged to the vehicle's prior owner only after Deputy Othmer conducted the inventory search.

To show that an inventory search was pretextual, Defendant would have to show that the search would not have occurred absent an impermissible reason. *See Orozco*, 858 F.3d at 1213 ("[W]e ask whether the officer would have made the stop in the absence of the invalid purpose. Thus, in order to prove that a stop is unreasonably pretextual, a defendant must show that the stop would not have occurred in the absence of an impermissible reason.") (internal quotation omitted) (emphasis removed)); *Johnson*, 889 F.3d at 1126 (applying Orozco burden allocation rule to an impound an inventory-search context). Mr. Zamora's own inability to demonstrate that he was the owner of the car, and his inability to operate the vehicle due to the suspension of his license, provided Deputy Othmer with objectively sound reasons to impound the car. *See Johnson*, 889 F.3d at 1126 (rejecting part of

ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE ~ 14

defendant's pretext argument by finding that defendant's "inability to contact the owner could not have been orchestrated by police, and without it, they may not have had reason to tow the car (as opposed to releasing it to its owner).").  These realities were presented to Deputy Othmer, not generated by him.

Whether the bag of suspected drugs was in plain view of Deputy Cinkovich is immaterial to the question of whether there was a legitimate basis for a reasonable inventory search by Deputy Othmer.  Even if the evidence showed that Deputy Othmer subjectively expected to find evidence of criminal activity inside the vehicle,[4] Deputy Othmer's administrative purpose for searching the vehicle is well supported by the record.  See *United States v. Garay*, 938 F.3d 1108, 1112−13 (9th Cir. 2019) (an expectation of finding evidence of criminal activity "would not invalidate an otherwise reasonable inventory search") (citing *United States v. Bowhay*, 992 F.3d 229, 231 (9th Cir. 1993), for the proposition that "dual motives" are permissible in an inventory-search context)).  Likewise, the Court finds the fact that Deputy Othmer released Defendant pending a search warrant after previously detaining Defendant for driving with a suspended license to have no impact on

---

[4] The Court makes no finding regarding Deputy Othmer's subjective expectations. However, the Court does find Deputy Othmer's testimony credible that he had no intention of acting on Deputy Cinkovich's remark that he saw a plastic bag containing what sounded to Deputy Othmer like a user amount of potential drugs.

ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE ~ 15

whether the inventory search was permissible and reasonable. Therefore, Defendant has not met his burden of demonstrating pretext.

By contrast, the Government has satisfied its burden of showing that the warrantless inventory search begun by Officer Othmer does not violate the Fourth Amendment. *See Brown*, 563 F.3d at 415.

### Subsequent Searches of the Vehicle

Search warrants must be supported by a showing of probable cause. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). "Probable cause to search exists when the known facts and circumstances are sufficient to warrant a reasonable person to conclude that contraband or evidence of a crime will be found." *United States v. Ibarra*, 345 F.3d 711, 716 (9th Cir. 2003). If a defendant is challenging the veracity of the statements offered in support of a search warrant application, the defendant bears the burden of establishing by a preponderance of the evidence that: "the affiant officer intentionally or recklessly made false or misleading statements or omissions in support of the warrant[,] and that the false or misleading statement or omission was material, i.e., "necessary to finding probable cause." *United States v. Martinez-Garcia*, 397 F.3d 1205, 1214−15 (9th Cir. 2005) (citing *Franks v. Delaware*, 438 U.S. 154, 156 (1978)).

Here, Defendant does not come forth with evidence of any false or misleading statements by the affiant officer. Therefore, having found that the impound search

1  was conducted for a legal reason, the probable cause based on that impound search
2  supporting the search warrants remains undisturbed.
3      The Court finds no fruit of the poisonous tree to suppress on the facts and
4  argument presented.
5      Accordingly, **IT IS HEREBY ORDERED** that Defendant's Motion to
6  Suppress Evidence, **ECF No. 27**, is **DENIED**.
7      **IT IS SO ORDERED**.  The District Court Clerk is directed to enter this Order
8  and provide copies to counsel.
9      **DATED** December 6, 2021.

           *s/ Rosanna Malouf Peterson*
           ROSANNA MALOUF PETERSON
           Senior United States District Judge